CASE 69—PETITION ORDINARY—APRIL 29.

# Gano v. Farmers' Bank of Kentucky at George-town.

APPEAL FROM SCOTT CIRCUIT COURT.

1. PRINCIPAL AND SURETY.—The contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction; and where one becomes a surety on an obliga-tion, executed to enable the principal therein to raise money with which to operate a business, the surety is released from liability thereon, where the party furnishing the money has knowledge of these purposes, and without the knowledge of the surety, applies half of the money so raised to the payment of a pre-existing debt of the principal, although there was no fraud on the part of the party furnishing the money and although the pre-existing debt was secured.

2. GUARANTY—NOTICE OF ACCEPTANCE.—Where one offers his name as surety in an obligation to whomsoever may accept the offer, he is entitled to notice of the acceptance thereof, and is not bound to inquire as to the acceptance of his proposal.

GEORGE E. PREWITT FOR APPELLANT.

1. The writing sued on was a guaranty, and the signers thereof guarantors for Pullen, although they were referred to therein as sureties. (Bell & Terry v. Kellar, 13 B. M., 382; Lowe v. Beck-with, 14 B. M., 189; Thompson v. Glover, 78 Ky., 195.) And being guarantors the appellant was entitled to notice of the acceptance thereof by the bank. Kincheloe v. Holmes, 7 B. M., 5; Adams v. Jones, 12 Peters, 207; Lee v. Dick, 10 Peters, 482; Russell v. Clark, 7 Cranch, 69; Edmondson v. Drake, 5 Peters, 624; Douglas v. Reynolds, 7 Peters, 113; 12 Peters, 497; Stead-man v. Guthrie, 4 Met., 157; Parsons on Contracts, Book 2, vol. 1, page 400, 3d edition; Estey v. Murphy, 7 Ky. Law Rep., 596.

2. It was a fraud upon the sureties or guarantors for the bank to receive part of the money which they had enabled Pullen to raise for the express purpose of operating the mill, in payment of their pre-existing debt. Rees v. Berrington, 2 Vesey, Jr., 540; Story's

Gano v. Farmers' Bank of Ky. at Georgetown.

Equity Jurisprudence, secs. 214, 215 and 324; Burks v. Wonterline, 6 Bush, 20; Graves v. Lebanon National Bank, 10 Bush, 25; Connecticut Mut. Life Ins. Co. v. Scott, 81 Ky., 542; First National Bank of Stanford v. Mattingly, 92 Ky., 652; DeGolyar on Guaranty, page 376; Mayhew v. Boyd, 5 Md., 102; Morehead's Assignee v. Citizens Saving Bank, 17 Ky. Law Rep., 89; Russell v. Ballard, 16 B. M., 203; Wright v. Johnson, 8 Wend., 512; Chitty on Constitution, 8 Am. Ed., page 459; Emmons v. Overton, 18 B. M., 650; Warren v. Fant's Trustee, 79 Ky., 731; Robinson v. Offutt, 7 Monroe, 541; Ky. Statutes, sec. 476; Vincent v. Callahan, 8 Ky. Law Rep., 964.

JAS. Y. KELLY ON SAME SIDE.

1. The signers of the paper "A" were merely guarantors for Pullen, and were each entitled to notice of the bank's acceptance of the same. 2 America's Leading Cases, pages 35, 45 and 55; 7 B. M., 5; 13 B. M., 381; 14 B. M., 184; 7 Peters, 113; Steadman v. Guthrie, 4 Met., 148.

2. The bank and Pullen suppressed and concealed from appellant, that Pullen owed the bank anything at the time the paper sued on was executed; this was a material circumstance which went to increase the risk of appellant, and appellee suffered appellant to enter into the contract under these false impressions, which operates as a fraud and vitiates the contract. Kent's Commentaries, vol. 2, page 378; America's Leading Cases, vol. 2, page 316; Burke v. Wonterline, 6 Bush, 23.

3. The bank was bound, when it accepted the collateral paper as security for its loan to Pullen, to take the same with all its stipulations, conditions and limitations; one of the stipulations of the paper is that it is to be used by Pullen as a collateral in the raising of ten thousand dollars to aid him to buy stock and run the Thompson mill successfully, and when the bank applied part of the money so raised by Pullen to other purposes, it perpetrated a fraud upon the guarantors, which released them. Russell v. Ballard, 16 B. M., 205; America's Leading Cases, vol. 2, p. 316.

OWENS & FINNELL FOR APPELLEE.

1. The signers of the paper sued on were sureties of Pullen and not merely guarantors. Waite's Actions and Defenses, 582 and 584 and cases cited; Daniels on Negotiable Instruments, p. 768; 41 Am. Reps., 146; 2 Met., 217; 14 B. M., 152.

2. But if the writing was only a guaranty, and the signers thereof only guarantors, it was an absolute promise to pay and no notice of acceptance thereof by appellant was necessary. 41 Am. Reps., 146; 46 Mich.,70; Story on Contracts, sec. 1133; Bailess on Sureties and Guarantors, 202; Gage v. Merchants National Bank, 79 Ill., 62; Fansing v. Reed, 105 Ill., 488 (36 Am. State Reps., 506);

VICTOR F. BRADLEY OF COUNSEL ON SAME SIDE.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellant, Gano, and nine others executed a writing to the end that one P. T. Pullen might obtain the sum of $10,000 with which to run a milling business in Georgetown, Ky.

The appellant bank on the strength of this writing furnished $5,000, which was used to pay off a debt then owing the bank by Pullen, and also $5,000 which was used in the business. After a time, Pullen being insolvent the bank called on the obligors in the writing for a discharge of their undertaking. All seemed to have paid their respective shares demanded by the writing except the appellant, who tendered certain issues of law and fact in defense of the action which followed his refusal to pay his share.

The writing which forms the basis of action is as follows:

P. T. Pullen, of Georgetown, Ky., contemplating the leasing of the. Thompson Mills and carrying on the milling business, and being in need of capital with which to buy stock and run the same as it should be run successfully, now, in order to aid him, we, W. E. Pullen, George Carley, George V. Payne, T. T. Hedger, J. M. Penn, James W. Craig, Buford Hall, Daniel Gano, S. B. Triplett and Warren C. Graves, whose names are hereto signed agree

to become his surety to an amount not exceeding $10,000 in the aggregate.  After this instrument of writing has been signed by all of us (ten in number) it may be used by the said P. T. Pullen in the nature of a collateral for a sum or sums not exceeding $10,000 in the aggregate, and we, the said signers, shall be bound jointly and severally as sureties upon any note or notes not exceeding in the aggregate said sum to which said Pullen shall sign his name and deposit this as collateral.  In case the money is borrowed of more than one party the lenders can agree upon who shall hold this writing for the benefit of all.  Said Pullen agrees to mortgage all property he now has to us in order to secure us by virtue of obligations assumed in this instrument, and renew said mortgage from time to time when required upon any and all property he may have.  This instrument of writing to continue in force for three years from the first day of July, 1891, and no longer, and if at any time any one or more of the signers hereto should die or become insolvent, said Pullen is to either pay off his or their portion of the money that may be borrowed, or furnish other good and solvent surety or sureties in his or their stead.  Said Pullen agrees to keep all grain and flour he may have on hand insured in some good insurance company for the benefit of the signers hereto, and his books are at all times to be open to the inspection of any one or all of the said signers, either in person or by an expert of their selection.  Given under our hands this 15th day of July, 1891.  (Signed) GEO. V. PAYNE

And others named in the writing.

The paper, as we have already indicated, was taken by

Pullen to the appellee to whom Pullen was then indebted in the sum of $5,000 evidenced by Pullen's note with his brother as surety. A new note was then executed to the bank for $5,000 and this note was then discounted by the bank and the proceeds taken to pay off this pre-existing debt. It is therefore insisted for the appellant that the principle announced in Russell v. Ballard 16 B. M., 205, is applicable here and when applied the surety stands discharged. It was there said:

"If a note be purchased by a party, with notice that one of the obligors is surety merely, and that the sale and purchase will defeat the purpose for which it was executed by him, or will violate any understanding or agreements between him and his principal, then the purchaser will be affected by such notice and can not hold the surety liable on the note to compel him to pay it." Here the bank has notice that Gano was surety merely on the writing taken as collateral by the bank to secure the new note. And it had notice that the sale and purchase of this new note and application of its proceeds to pay off the old debt would defeat the sole purpose for which the writing was executed by the surety, namely, "to raise the sum of $10,000, buy stock and run the same."

This would seem sufficient to bring the case within the principle announced in the cited case. For it is manifest that if one-half the capital needed to carry on the milling business and "run the same successfully" was to be taken to pay off an old debt, the business must suffer and likely not be run successfully. But this is not all. The bank had

notice that the sureties looked to the property which this money—all of it—would buy as an indemnity by way of mortgage. And by whatever amount the actual cash furnished Pullen for his business was lessened. by that amount the value of their indemnity would be lessened. This is also in line with the general doctrine so often announced by the text writer and 'by this court for the protection of sureties. We might assume without proof—but the evidence is conclusive on the point—that appellant would not have entered into this contract had it been disclosed to him that this "letter of credit," as the writing may be termed, was to be used to pay off the large debt due the bank, and therefore it was incumbent on the bank to disclose to the surety all the facts material to the risk before it could divert the fund intended to be raised by the collateral to purposes of its own. The rule is thus stated by Mr. Story in his Equity Jurisprudence. "The contract of' suretyship imports entire good faith and confidence between the parties in regard to the whole transaction. Any concealment of material facts or any express or implied misrepresentation of facts or any undue advantage taken of the surety by his creditor, either by surprise or by withholding proper information, will undoubtedly permit sufficient grounds to invalidate the contract. (Section 324.) And further, "thus if a party taking a guaranty from a surety conceals from him facts which increase his risk and suffers him to enter into the contract under false impressions as to the real state of facts, such concealment will amount to a fraud, because the party is bound to make

the disclosure, and the omission to make it under such circumstances is equivalent to an affirmation that the facts do not exist." (Sections 214 and 215.) (See Commonwealth v. Berry, 95 Kentucky, 443, and cases cited.)

Other obligors who lived in or about Georgetown, the scene of this transaction, seem either to have had knowledge of these material facts at the time or obtained it shortly afterwards, and having that knowledge, still paid off their shares; but the appellant was an old man, some eighty-five years of age, living quite a distance from the town and visiting there only a few times within a year. There is no doubt of his entire ignorance of the material facts indicated. He was not even apprised of the fact that the writing had been used by Pullen with the bank or any one else and money obtained thereby. It seems to be clear that he was entitled to this notice. He had merely offered his name with that of others as surety to whomever might accept the offer and loan of money. He was therefore entitled to notice of acceptance. In Steadman v. Guthrie 4 Met., 148, it was held that "when the offer is to guaranty a debt for which another is primarily liable in consideration of some act to be performed by the creditor- mere per, formance of the act is not sufficient to fix the liability of the guarantor; but the creditor must notify the guarantor of his acceptance of the offer or of his intention to act upon it. That the guarantor might, by inquiry from the person in whose favor the guaranty was given, have learned what had passed between the guarantees and himself, will not dispense with notice . A person thus proposing to become surety for another is not bound to inquire as to the accept-

ance of his proposal: the creditor, who intends to hold him- responsible for the debt of another must show reasonable notice of such intention." See also Kincheloe v. Holmes, 7 B. M., 5; Lowe v. Beckwith, 14 B. M., 189; Thompson v. Glover, 78 Ky., 195. It is true in this case that the record does not show that the bank's old debt on Pullen was in danger of being lost. It was secured by the brother of the debtor who was solvent, although his property was in the main, covered by mortgages and he was already indebted to the bank in a considerable sum. Still it may be said he was insolvent. We think this, however, makes no difference. It may show more conclusively—what is already apparent enough, that there was no actual fraud intended by the bank or any of its officers in the transaction, but this does not change the legal status of the parties on the point involved. It further appears that the brother of the principal debtor, who was surety on an old debt, had a mortgage on certain stock and property belonging to the debtor to indemnify him in his suretyship and this was released, and a mortgage taken in favor of the obligors in the writing in question. But it further appears that the value of this property was quite insignificant and that appellant had no knowledge even that this had been done.

The writing, the contents of which the bank had notice because they accepted and acted on it, entitled the obligors to have a mortgage on all the property the debtor had or might acquire and we do not see that because one was in fact executed of which no notice whatever was given to the appellant can take the place of the notice to which

we have said appellant was entitled when his offer was accepted and acted on by the bank.

Actual notice is what the law requires and notice or knowledge of this new mortgage might have been sufficient, but this the appellant did not have.

We think the plaintiff's petition should have been dismissed and the judgment is reversed for proceedings consistent with this opinion.