WILHELMINA BAUR, respondent,

*v.*

LOUIS P. CRON et al., appellants.

[Argued July 3d, 1906. Decided March 4th, 1907.]

Where a person enfeebled in mind by disease or old age is so placed as to be likely to be subjected to the influence of another, and makes a voluntary disposition of property in favor of that person, there must, to sustain it, be proof of the fact that the donor understood the nature of the act and that it was not done through the influence of the donee.

On appeal from a decree in the court of chancery, advised by Vice-Chancellor Bergen, who filed the following opinion:

The original bill filed in this cause was an interpleader, filed on behalf of a party whose property was encumbered by a mortgage, amounting to $1,500. In that proceeding a decree of interpleader was taken, the money paid into court, and this contest arises over the disposition of the fund. The mortgage in question belonged to Mrs. Elizabeth Cron, by virtue of an assignment made to her some years ago. She died, leaving a will, which was admitted to probate, and in the interpleader proceedings

William Cron, one of the sons and an executor, filed an answer, claiming that the money should be paid over to the estate for distribution. The other son, Louis P. Cron, answered, insisting that the money belonged to him, because previous to the death of his mother, Elizabeth Cron, she had made him a gift of the mortgage. His story is this: That in March, as his mother died on the 11th of May following, she, being then ill, gave him this bond and mortgage; in other words, made him a present of it. That he took possession of the bond and mortgage, and had since held it in possession. Mr. Wilson, an attorney, was on the 16th day of April, preceding her death in May, present to obtain the material for drafting a will for Mrs. Cron, and he testifies that during a conversation on that occasion she told him that she had given this bond and mortgage to her son Louis; that he inquired how she had made the transfer, and finding that it was only by delivery, he advised her that she would have to make a formal assignment of it, which he says was afterwards carried out. It appears in the case that the only persons in the house taking care of Mrs. Cron during her last illness were her son Louis, the donee, and a Mrs. Reddinger, who was employed as a nurse; that the care and attention which she received during the latter days of her life came entirely from these two persons. Under this condition of affairs it seems to me that the burden of maintaining this gift is cast upon the party claiming it, and that this conclusion is sustained by the opinion written in *Slack* v. *Rees,* 66 *N. J. Eq.* (21 *Dick.*) 447, 448, by the chief-justice, in a case determined by the court of errors and appeals of this state. The chief-justice, illustrating the conditions in that case, used the following language, which I will read: "For a period of nearly three months prior to his death he was an inmate of his daughter's home. He was, during all that time, dependent upon her for the care and service which a man in his weakened physical and mental condition constantly requires. The normal relation of parent and child as it had existed in earlier years had been reversed, and the daughter had become the guardian of the father. In this situation the law presumes that a gift made by the parent to the child is the produce of undue influence, and casts upon the latter the burden of proving the con-

trary." And the chief-justice, in another part of the opinion, speaking of the finding of the vice-chancellor, used the following language: "He seems to have considered, however, that such relationship was not shown, unless it was made to appear that the donee occupied such a dominant position toward the donor as to raise the presumption that the latter was without power to assert his will in opposition to that of the donee. But this is not the situation. The rule has a much broader sweep. Its purpose is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them, the effect of which upon his own interests he may only partially understand or appreciate." In using this latter language the chief-justice was referring to the absence of independent advice as affecting the paper that was being executed. Applying the facts to this case, we find that Mrs. Reddinger testified that in August, 1903, shortly after the death of the father, the mother said to her that she wanted her son Louis to have this bond and mortgage for $1,500.

Without now calling attention, as I shall hereafter, to the apparent interest of this witness, it is enough to say that if Mrs. Cron used any such language at that time, she afterwards radically changed her mind, because on the 6th of December following she gave instructions to have a codicil to her will prepared, which Mr. Schmidt has testified was executed by her, in which she made no attempt to give her son Louis this mortgage of $1,500, but, on the contrary, directed how it should be disposed of, which was in a manner entirely different from that suggested by Mrs. Reddinger. Under the codicil her funeral expenses were to be paid, half out of the $1,500 and the other half out of some money she had in the savings bank. Then her son was to be paid for services which he had rendered to her, and which he might render to the estate after her death, without fixing the amount, and the balance of this $1,500 was to become part of her estate, to be divided between her children, so that on the 6th day of December, 1903, she certainly did not have in her mind any determination whatever to give to this son this $1,500 mortgage.

The next step in this proceeding occurs in February—either the latter part of February or the beginning of March, I do not recall the exact date—when the son Louis and Mrs. Reddinger testified that this mortgage was given to the son Louis by delivery. It will be observed that this took place after Dr. Quinn testifies her last illness began, which was the 23d of February. From the 23d of February until her death, on the 11th day of May following, Dr. Quinn was in constant daily attendance, oftentimes going there more than once a day. And at that time this old woman, declining in life, under the influence only of her son and this nurse, and without independent advice, is said to have given this mortgage to her son. Standing just there, manifestly, under the case I have read from, it would not be a good gift. Next, we have the calling in of the attorney to draw the will. In this connection we must recollect that the old friend of Mrs. Cron, a person who had always advised her, the witness Mr. Schmidt, the person who had drawn her previous wills and codicils, and who had drawn a codicil as late as December previous, and who afterwards, in March, had been sent for and asked to prepare, and who did prepare, another codicil to her will, when he went there with the witness to have the codicil executed refused to have it executed, because, as he said, he was satisfied that this woman was not then in a mental condition to know what she was doing with her property. What turned this old woman from this lifelong friend? Why did she have someone else draw a will for her, whom it is admitted had never done any business for her before? The person upon whom she had always relied was unwilling to have the will executed or changed. Who sent for this new lawyer? The evidence is very vague, to say the least. At any rate, this is apparent: That the two people who were interested in having this mortgage assigned were the only people about the house with whom this dying woman could communicate, and they procured and had brought there a lawyer who not only drafted a will, but who caused this mortgage to be formally assigned.

I confess, with reluctance, that I cannot accept as true much of the evidence of the lawyer. It is manifest that he was drawing upon his imagination when he testified here that Mrs. Cron

had told him that she had given Louis this mortgage, and that he had had it a long time, because he had collected interest on it. Mrs. Cron, if she did say that, told him what was not true, as a matter of fact, and which she knew was not true. I am satisfied that the attorney, owing to his many duties, and perhaps to the fact that he afterwards, as the attorney for Louis Cron, collected this interest, supposed that she told him. Certainly it was not told him, because the fact did not exist at the time he testified she told him about it. I know how it is with the lawyer in active practice. He is very apt to forget or overlook, but he ought not to permit his imagination to run away with him, and testify that he was told by Mrs. Cron that Louis Cron had collected interest on that mortgage, when, as a matter of fact, he had not collected it, and did not collect any interest on it until after his mother's death. My notion of the case is that the claimant, the donee, has not met the burden of proof. What he should have done would have been to have immediately told his brother that he had been preferred, and that this mortgage had been assigned to him, instead of keeping it in secret until the person who had executed this assignment was dead. On the contrary, he refrains from telling about it, and the assignment is not even put on record until a long time after the death of the mother, and I think not until after the will had been probated, although I may be wrong as to that fact. Now, as to the interest of Mrs. Reddinger. I cannot dispose of this case without referring to it. As far as I can see, there is no reason why she should remain at that house with Louis Cron for more than a year after the death of the person who employed her. She testified that she is staying there because she promised Mrs. Cron that she would remain there until the estate was settled. There is nothing in this estate for her to settle. There can be no difficulty about the settlement of the estate. The only difficulty is about the settlement of this controversy, in which she is one of the most important witnesses; and coupled with the fact that she still remains in this house with this man for more than a year after her duties there ceased, and, so far as this case shows, without employment, and without compensation, her interest, as I look at it, is substantially as strong as that of the claimant, and I am

persuaded that the assignment of this mortgage was a matter arranged between Mrs. Reddinger and Louis P. Cron to get the property away from the old lady to his advantage.

I will therefore advise a decree that this fund belongs to the estate of Elizabeth Cron.

*Mr. Patrick H. Gilhooly* and *Mr. Samuel Koestler,* for the appellant.

*Messrs. Hudspeth & Carey,* for the respondent.

The opinion of the court was delivered by

FORT, J.

It is unnecessary to repeat the facts in this case, in view of the full and accurate discussion of them in the opinion of Vice-Chancellor Bergen, who advised the decree from which this appeal is taken. With his statement of the facts we agree, and to them refer for the details of the case.

But upon these facts we think the complainant is entitled to a decree, not upon the ground that the donor of the mortgage in question was without independent advice at the time it is alleged she gave it to her son, the defendant, or at the time she made the formal assignment thereof to him, but because we think the facts established by the proof raise a presumption of undue influence on the part of the defendant in procuring the alleged gift, and that, because of that presumption, the burthen was cast upon the defendant to show, by clear, convincing and satisfactory evidence, that the gift of the mortgage was the voluntary and intelligent act of the donor. *Coffey* v. *Sullivan, 63 N. J. Eq.* (*18 Dick.*) *296, 302; 20 Cyc. 1219.*

In this respect he has failed to carry this burthen of proof, and therefore we think the decree below was right, and that the case is governed in its decision by the opinion of this court in *Haydock* v. *Haydock, 34 N. J. Eq.* (*7 Stew.*) *570,* rather than by that of *Slack* v. *Rees, 66 N. J. Eq.* (*21 Dick.*) *447,* upon which the learned vice-chancellor who advised the decree below seems to have put it.

In *Haydock* v. *Haydock, supra,* Mr. Justice Reed, speaking for this court, said: "I take the rule to be settled that where a person enfeebled in mind by disease or old age is so placed as to be likely to be subjected to the influence of another, and makes a voluntary disposition of property in favor of that person, the courts require proof of the fact that the donor understood the nature of the act, and that it was not done through the influence of the donee. * * * The presumption against the validity of the gift is not limited to those instances where the relation of parent and child, guardian and ward, or husband and wife, exist, but in every instance where the relation between the donor and donee is one in which the latter has acquired a dominant position."

In the case before us the facts stated by the vice-chancellor, and justly found by him, show that the donor, the mother of the defendant in this case, was an old woman, enfeebled in mind by disease or old age, or both, and under the influence of the defendant and the nurse, who were with her constantly, and practically her sole attendants.

These facts bring the case clearly within the rule laid down by Mr. Justice Reed in the case of *Haydock* v. *Haydock,* above cited.

The decree of the court of chancery is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, GREEN, GRAY, DILL—13.

*For reversal*—None.