CHARLES G. ALBERTS, executor of the estate of George W. Alberts, deceased, complainant-appellant,

*v.*

LOUISA E. ALBERTS and HELEN L. MULLER, defendants-respondents, and PUBLIC SERVICE CORPORATION OF NEW JERSEY, defendant.

[Submitted October term, 1935.   Decided January 31st, 1936.]

*Mr. Samuel Weitzman*, for the complainant-appellant.

*Messrs. Melosh, Morten & Melosh   (Mr. Louis G. Morten).* for the defendants-respondents.

The opinion of the court was delivered by

CASE, J.

Chancery dismissed the bill, filed by the executor of George W. Alberts, deceased, to reclaim to the estate fifteen shares of Public Service Corporation eight per cent. preferred stock which had been assigned by the decedent to his wife, Louisa E. Alberts, two days before his death and again assigned, a

few days later, without consideration, by Mrs. Alberts to her daughter, Helen L. Muller.  Public Service Corporation did not contest.  Complainant appeals.

Decedent was stricken in 1924 with what appeared to be a stroke of paralysis.  His illness was incurable.  For years before his death he was quite helpless, and for seven months he had been a bedridden inmate of hospitals—at the Bayonne Hospital for a time and, upon the refusal of that institution to retain him longer, at the Hudson County Hospital, where he died November 8th, 1930, aged fifty-eight years, without ever having recovered his health sufficiently to return to work. A few weeks before his death he had, through his son as attorney, caused the sale of certain securities from which he received, after the payment of a debt for which the securities were held as collateral, a credit of $800.  Together with his wife he owned two real estate properties by the entirety, one the family home where his wife continued to reside and the other an East Orange property, in which, because of a heavy mortgage encumbrance, there was little or no equity.  Aside from these assets and the above mentioned Public Service stock the record discloses no property.

On November 5th, 1930, following a call, the purport of which does not appear, which Mrs. Alberts had made alone upon her husband, Mrs. Alberts and Mrs. Muller went to Albert's bedside.  In the ensuing conversation, testified to by Mrs. Muller, Mrs. Alberts criticised the action of Alberts in giving a power of attorney to Charles G. Alberts, decedent's son by a former marriage, whereupon Alberts intimated that the character of the paper had been misrepresented to him, became angered at Charles and directed Mrs. Muller to note down certain directions for the preparation of a paper which she later typed.  On the following day Mrs. Alberts procured a funeral director, who was also a notary public, and in the evening took him with two witnesses to the hospital, whereupon Alberts signed the writing prepared by Mrs. Muller. That instrument contained a statement that he had signed the papers for his son under the apprehension that they were to secure his release from the hospital and the further statement

that he did not wish any division of the money which he and his wife "may have together." Then Mrs. Alberts produced from her handbag the certificates of Public Service Corporation stock and asked her husband if he was willing to sign them over to her. Alberts, who had been excited by the incident of signing the first paper, was by that time so exhausted that he could only make his mark and by that method he executed, touching the pen. He was a very ill man and practically blind.

On behalf of the appellant it is contended that the court below erred in holding that the so-called rule of independent advice did not apply to the instant case.

In *Slack* v. *Rees, 66 N. J. Eq. 447,* wherein Slack, the day before his death, conveyed his only real estate to his daughter, upon whom for the preceding three months he had been dependent for personal care and service, this court said: "* * * we conclude that the conveyance must be set aside, because, in making it, the donor did not have the benefit of competent and independent advice as to its effect. That the absence of such advice will invalidate a deed of gift, which contains no power of revocation, where a relation of trust and confidence exists between the donor and donee, is not denied, * * * Its purpose [viz., the purpose of the rule] is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them, the effect of which, upon his own interests, he may only partially understand or appreciate." Again, in *Post* v. *Hagan, 71 N. J. Eq. 234,* distinguishing between *Slack* v. *Rees, supra,* which has specific application to cases in which the gift, if valid, has the effect of stripping the donor of all or practically all of his property, and *Haydock* v. *Haydock's Executors, 34 N. J. Eq. 570,* which applies generally to gifts that bear no such relation to the donor's entire estate, this court said: "This distinguished circumstance, namely, that a person already aged or infirm or otherwise dependent should give to the one upon whom he thus depends

practically his whole living beyond recall, and at the very time when apparently he had most need to retain it, raises in the mind of a chancellor the presumption that the donor may not have appreciated the irrevocable character of his act or that he did not foresee its legal consequences to himself. * * * Proper independent advice in this connection means that the donor had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidently as to the consequences to himself of his proposed benefaction." In the chancery case of *Pearce* v. *Stines, 79 N. J. Eq. 51,* Vice-Chancellor Stevens, considering how much property a donor might give without bringing himself within the rule of *Slack* v. *Rees* thought that the question was not so much one of definite fractions as of practical results and concluded thus: "* * * a donor having barely sufficient property to sustain himself for the rest of his life, shall not irrevocably, and without advice, give away so much of it as to leave himself an object of charity."

One of Albert's real estate properties was mortgaged to its value. The other was the home which the wife showed no disposition to sell. The sale value of the husband's interest in the titles by the entirety, he being incurably ill of a progressive disease, was negligible. The only assets that were, with any degree of assurance, available were the $800 credit and the Public Service stock, which the court below assumed to be worth $1,500. Alberts had the right to strip himself of his property if, with full knowledge of the legal and practical effect, he determined to do so. But in his weakened and helpless condition his sense of thrift and his forethought for his future pecuniary needs may have been stilled by his trust and confidence in and his spiritual dependence upon his wife and may not even have entered his mind. It is against just that improvident contingency that the law has ordained competent and independent advice. It was certain that Alberts

would never again have earning capacity. It was not certain how long he would live. The act, from the viewpoint of that moment, was improvident. The fact that Alberts died within two days is not determinative. *Slack* v. *Rees, supra.* Between Alberts and his wife the normal positions had been reversed. He was no longer the dominant figure. He was dependent upon his wife, not immediately for physical ministrations, but for sweet comfort and solace with which to ease the journey through the valley of the shadow of death. If an attack be made upon a pure gift donated to one of dominant personalty by another who thereby stripped himself of reasonable means of support, the law will not sustain the improvident act unless it be shown that the donor had competent and independent advice. Alberts should have had such advice. He had nothing that even resembled it.

A further point presented by the appellant is that the court erred in permitting the defendant Helen L. Muller to testify, contrary to the provisions of section 4 of the Evidence act (*2 Comp. Stat. p. 2218*), to statements made to her by the deceased. The study of the subject given by this court in *Smith* v. *Burnet, 35 N. J. Eq. 314,* was ably restated by Vice-Chancellor Van Fleet in *McCartin* v. *Traphagen's Adm'r, 43 N. J. Eq. 323, 329,* as follows: Does the witness "stand in a position of antagonism to the estate of the intestate or testator represented in the suit · or proceeding in which he is called as a witness, so that if he should testify upon the prohibited subjects, he would give his testimony under a temptation to forget what he should remember, or to commit perjury? If he does, he is incompetent."

It is, we think, obvious that either the statements made by Alberts on November 5th, 1930, were irrelevant or the recital of them by Mrs. Muller was against the direction of section 4. If they were irrelevant, they had no place in the case; but we think that they were relevant. They constituted an attack upon an earlier transaction between Alberts and his son which Mrs. Alberts regarded as a threat against her interest. They were cemented to the present issue by common motives and results and were followed on the next day by the simultaneous

execution of a paper relating thereto and of the assignments in question. The support which the interview of November 5th gave to the assignment of stock and the singleness of design become apparent in the reasoning which led the vice-chancellor to his conclusions. It is clear that the testimony given by Mrs. Muller was a prop upon which the decision rested; and whether or not the subject-matter be designated a transaction, it surely was a recital of statements made by the decedent. The vice-chancellor ruled that as Mrs. Muller was not on November 5th and 6th a party to the transaction she did not come within the statute. That, we think, was an erroneous construction. Mrs. Muller was a party, a necessary party, at the time she took the witness stand. The witness was and is the owner of the stock which complainant seeks. Her title will fail if complainant succeeds. The temptation was there. Section 4 prohibited her from giving testimony as to any transaction with, or statement by, the decedent unless the executor offered himself as a witness on his behalf and testified to any transaction with, or statement by, his testator—a condition which was not met. But the effect, if any, of chapter 189, *P. L. 1931,* has not been presented here and seems not to have been considered below. That statute, a supplement to the Evidence act, provides that "in all civil actions founded upon any allegation of fraud, breach of trust, willful default, or undue influence, the defendant may be sworn and examined as a witness on his own behalf, notwithstanding the opposite party may sue by a guardian or in a representative capacity." The case was not decided upon any of the grounds there enumerated, but the allegations of the complaint did include undue influence, duress and fraud and appellant's brief charges that the court below erred in holding that the transfer of the certificates was not the result of fraud or undue influence. Precisely where that leaves the point now under discussion is not apparent. In this confusion, and in the absence of any argument thereon, we withhold determination of the point.

The remaining points urged by the appellant do not disclose error.

The decree will be reversed, for the reason first above stated, and the record will be remitted to the court of chancery to be disposed of in manner not inconsistent with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, LLOYD. CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, JJ.   12.