34 N.J. Super. 62 (1955)
111 A.2d 432
LILLIAN ELLIS, PLAINTIFF,
v.
GEORGE J. ELLIS AND GRACE ELLIS, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 28, 1955.
*63 Mr. Harold S. Okin, attorney for plaintiff.
Messrs. Seufert & Elmore, attorneys for defendants.
GRIMSHAW, J.S.C.
Plaintiff brings this action to set aside a conveyance made by her to the defendant, who is her son. The deed, dated April 8, 1953, transferred to the defendant without monetary consideration, title to a house and lot in the City of Englewood. It contained a reservation of a life estate to the plaintiff in the following language:
"The grantor hereby reserves to herself a life interest in said premises, including the right to occupy the part now occupied by her for the remainder of her life, and the grantee, by the acceptance of this deed, assumes and agrees to pay all the carrying charges pertaining to said premises."
The conveyance left the plaintiff with no assets other than bank accounts in the approximate amount of $3,300. At *64 the time of the conveyance the plaintiff was 76 years of age, crippled and suffering from hardening of the arteries of the brain. At the final hearing she was very feeble and her testimony was most unsatisfactory. It was rambling, contradictory and at times confused. The doctor who had been consulted by her several times shortly before and after the date of the conveyance testified that her physical condition was poor. He said she was at times confused and incoherent and he gave it as his opinion that the ability of the plaintiff to transact business was debatable.
The defendant George J. Ellis testified that in 1939 at a time when he and his family were living in a house owned by his wife, the plaintiff urged him to bring his family to live on the ground floor of her home. He says she told him that she was having trouble with her tenants and wanted to be relieved of the responsibility of managing the property. That statement is difficult to understand since at the time the proposal was made, the plaintiff had no tenants. In any event, it was agreed that the plaintiff would have a roof put on the house. She was to have it painted. A sidewalk was to be laid, and a new heater was to be installed. In return for all this the defendant was to move into the house and occupy the first floor. He was to be responsible for the upkeep of the property and provide fuel for heating purposes. This arrangement continued up until the time of the conveyance.
About a week before the deed was drawn, the plaintiff broke her arm and suffered other bruises. She was unable to get about and had to rely on the defendant and his family to run her errands for her. It was then, according to the defendant, that the plaintiff insisted that he take over the property. The desire of the plaintiff that he accept a conveyance had been expressed to him several times over the years and he said he would not have moved into the property in the first place had he not been assured that the property would ultimately be conveyed to him.
Ellis and his wife took the plaintiff to her own lawyer, who was informed that Mrs. Ellis desired to convey the *65 property to her son. The attorney, one of the leading members of the Bergen County bar, spent considerable time discussing with the plaintiff the effect of the contemplated action. It was he who insisted that the deed contain the reservation of a life estate in the plaintiff. Convinced that the plaintiff understood the significance of the conveyance, the attorney presided over the execution of the deed. However, the discussion took place in the presence of the defendant and his wife. There was no thought given to plaintiff's remaining assets nor was there any discussion of the situation which would arise in the event that plaintiff spent all of her money. Since the defendant was not obligated to support the plaintiff she could become a public charge if and when her money was all used up. This phase of the situation was not discussed.
"Where the donor is aged and is feeble in body and is so placed that he is more or less dependent on the donee or is likely to be subjected to the influence of the donee, the courts require clear, convincing and satisfactory proof of the fact that the donor fully understood his voluntary disposition of property in favor of the donee and that it was not done through the influence of the donee. Haydock v. Haydock, 34 N.J. Eq. 570; Slack v. Rees, 66 N.J. Eq. 447; Post v. Hagan, 71 N.J. Eq. 234; Bauer v. Cron, 71 N.J. Eq. 743; Croker v. Clegg, 123 N.J. Eq. 332. Here the burden was on defendants to show that the gifts in question were the voluntary and intelligent act of the decedent and this they attempt to do by their uncorroborated testimony which I regard at least with suspicion. Berg v. Baldwin, 84 N.J. Eq. 90, affirmed 84 N.J. Eq. 193; Heyer v. Sullivan, 88 N.J. Eq. 165, affirmed 88 N.J. Eq. 595; Madison Trust Co. v. Allen, 105 N.J. Eq. 230, affirmed 107 N.J. Eq. 183.

* * * * * * * *
Another rule of established law is that where in such a situation the donor strips himself of all or nearly all of his property a presumption exists that he did not fully understand and appreciate the effect of his act or its legal consequences to himself and there is cast on the donee the duty of showing that the donor had the benefit of competent and independent advice before he acted. Slack v. Rees, supra; Post v. Hagan, supra; Alberts v. Alberts, 119 N.J. Eq. 391; Peppler v. Roffe, 122 N.J. Eq. 510; Croker v. Clegg, supra. And proper and independent advice means that the donor had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person so disassociated from the interest *66 of the donee as to be able to advise with the donor impartially and confidentially as to the consequences to himself of his proposed benefaction. Post v. Hagan, supra; Soper v. Cisco, 85 N.J. Eq. 165."
Vanderbach v. Vollinger, 1 N.J. 481 (1949).
There is no suggestion that undue influence was exerted by the defendant. But there was a relationship of trust and confidence between the parties in which the defendant was the dominant figure. It, therefore, becomes important to determine whether at the time of making the gift the plaintiff fully understood the effect of the conveyance.
I have grave doubt of the ability of the plaintiff to understand the nature of the act which she was performing at the time she executed the deed. But entirely aside from that, while the advice which she received was from her own attorney who was both competent and able and devoted to her interests, I am of the opinion that she was not made to understand the results which might ensue in the event that her personal estate was depleted. I do not think she realized that by failing to require a provision for her support, she was making it possible for her to become dependent on the charity of others and destitute when her funds were exhausted. In my opinion, therefore, the deed must be set aside.
There remains the question as to what shall be done about capital improvements made by the defendant since the conveyance. They total $360.11. The taxes paid since that date amount to $456.10. The defendant should receive reimbursement for these expenditures. Expenditures made by him prior to the conveyance were, according to his testimony, assumed by him in lieu of rent.
Judgment accordingly.