SAMUEL B. LESSER, AS TRUSTEE, ETC., PLAINTIFF-CROSS-APPELLANT, v. H. ERNEST STRUBBE, *ET AL.*, DEFENDANTS-CROSS-RESPONDENTS, AND ANDREW W. O'ROURKE, *ET AL.*, DEFENDANTS, AND PAUL R. KLEINBERG, TRUSTEE, ETC., DEFENDANT-CROSS-RESPONDENT.

SAMUEL B. LESSER, AS TRUSTEE, ETC., PLAINTIFF-CROSS-APPELLANT, v. H. ERNEST STRUBBE, JR., *ET AL.*, DEFENDANTS-CROSS-RESPONDENTS.

ELEANOR STRUBBE, PLAINTIFF-APPELLANT, v. SAMUEL B. LESSER, AS TRUSTEE, ETC., DEFENDANT-RESPONDENT.

Argued April 24 and May 7, 1962—Reargued October 10, 1962—Decided January 21, 1963.

*Mr. Walter D. Van Riper* argued the cause for plaintiff-appellant Eleanor Strubbe (*Messrs. Van Riper and Belmont,* attorneys).

*Mr. Alfred C. Clapp* argued the cause for plaintiff-cross-appellant and respondent Samuel B. Lesser, Trustee, etc. (*Messrs. Clapp and Eisenberg,* attorneys; *Mr. Clapp,* of counsel).

*Mr. Jack L. Cohen* argued the cause for defendant-cross-respondent Paul R. Kleinberg, Trustee in bankruptcy of H. Ernest Strubbe.

PER CURIAM. The judgment of the Appellate Division is affirmed for the reasons expressed in its opinion. 67 *N. J. Super.* 537 (1961). We add the observation, however, concerning the incongruity in Mrs. Strubbe's position mentioned in the opinion, 67 *N. J. Super.,* at *p.* 547, that, as we read the pleadings, she sought relief, as far as the mortgages

were concerned, only with respect to that encumbering her own property in Elizabeth. No costs to any party.

FRANCIS, J. (dissenting). In my view the judgment of the Appellate Division should be reversed and that of the Chancery Division reinstated substantially for the reasons expressed by Judge Scherer. See 56 *N. J. Super.* 274 (*Ch. Div.* 1959). Examination of all of the testimony in the case, including the portions recited in his opinion, furnishes convincing support for his finding as to the failure of the trustee's attorney to satisfy his duty of inquiry of Mrs. Strubbe with respect to her understanding of the transaction which, to the attorney's knowledge, was putting at stake her entire assets to secure an obviously extremely speculative venture of her 71-year-old husband.

In voting to affirm the trial court, however, it is not necessary to endorse his view that the issue is akin to, and controlled by, the principle enunciated in *Ellis v. Ellis,* 34 *N. J. Super.* 62 (*Ch. Div.* 1955). My agreement with Judge Scherer is based upon (1) the failure of lenders' attorney to make reasonable inquiry of Mrs. Strubbe which unquestionably would have revealed her husband's imposition on her and her lack of knowledge of, or consent to, the financial strait jacket with which the lenders were binding her, (2) the failure of lenders' attorney to discharge with reasonable care the duty he had assumed of explaining the various involved documents and agreements he was asking her to execute, and (3) the misrepresentation by the lenders' attorneys of the instruments of guaranty as securing a corporate obligation, when in truth, and in fact, the usurious loan secured thereby was made to an individual, namely Mrs. Strubbe's husband.

With respect to (3) I believe additional reasons are present for relieving Mrs. Strubbe. The oral statements of the lenders' attorney, as well as the written assertions of the documents themselves, represented that the amount of the loan to West Albany Warehouses, Inc. was $600,000. Actually the basic amount of the loan to Strubbe was $530,000,

a usurious premium of $70,000 being added. (Moreover, in addition to the usury, the alleged $600,000 loan was for one year with interest at 6% or $36,000. Thus the rate of interest on the $530,000 loan for that period was $106,000 or 20%. Also, according to the documents signed by Mrs. Strubbe, if repayment was not made within the year, the interest rate thereafter became 24%. It is clear from the record that Mrs. Strubbe was not advised and was not aware of these facts.) Furthermore, $160,653.65 of the $530,000 was diverted by Strubbe to pay off mortgages on property owned by him which was to be used as collateral for the loan. The lenders' attorneys required the satisfaction of these mortgages as a condition of the loan. A subterfuge was employed with the aid and knowledge of at least one of them to make it appear as though the mortgages were being satisfied with funds derived from a source other than the lenders. Actually it was done by a device more transparent than masking, i. e., a contemporaneous certified check "swapping" which cost Strubbe an additional substantial sum.

The active misrepresentation, oral and written, that the loan was to a corporation when it was to an individual, and that the amount was $600,000, as well as the concealment from Mrs. Strubbe of the true facts as to those and other material matters, cannot be ignored. The trustee claims that Mrs. Strubbe, having signed the instrument of guaranty, must be considered bound by the form in which the obligation is expressed therein. He contends also that even if the writing itself misrepresented the essential facts of the transaction (i. e., a loan to an individual as a loan to a corporation), and misrepresented the amount of the loan, as well as the use to which at least part of the money was to be put, the guaranty cannot be avoided because there is no proof that she was induced to sign by the misrepresentations. Such an argument is spurious. On the record here, her signature on the documents speaks reliance. In addition, the circumstances attending their execution provide ample support for an inference of reliance. Accordingly, in my judgment the

guaranty agreement should be regarded as unenforceable against Mrs. Strubbe. As Story said:

"The contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction. Any concealment of material facts, or any express or implied misrepresentation of such facts, or any undue advantage taken of the surety by the creditor either by surprise or by withholding proper information, will undoubtedly furnish a sufficient ground to invalidate the contract. Upon the same ground the creditor is in all subsequent transactions with the debtor bound to equal good faith to the surety. If any stipulations therefore are made between the creditor and the debtor which are not communicated to the surety and are inconsistent with the terms of his contract, or are prejudicial to his interests therein, they will operate as a virtual discharge of the surety from the obligation of his contract." 1 *Story, Equity Jurisprudence* (*13th ed.* 1886), *p.* 334.

See also, *Gano v. Farmers Bank of Ky. at Georgetown,* 103 *Ky.* 508, 45 *S. W.* 519 (*Ct. App.* 1898).

Neither the Appellate Division nor the majority of this court had occasion to consider problems of priority and method of satisfaction of any claims of the plaintiff or other lienors in the various foreclosure actions, or particularly any claim of the plaintiff which may arise after determination of the mortgage foreclosure proceeding in New York. Nor has there been any discussion with respect to the application of Strubbe's assets, pledged or otherwise, to the satisfaction of such claims prior to an attempt to recover under Mrs. Strubbe's guaranty. Such matters would seem to have been reserved by the trial court for later disposition. See 56 *N. J. Super.,* at *page* 280. It seems to me that under the special equities of the case plaintiff should be denied recourse to Mrs. Strubbe's guaranty until the assets represented by Strubbe's guaranty are first exhausted. But further, assuming, *arguendo,* that the agreement is binding on Mrs. Strubbe as a guaranty of a corporate obligation of $530,000, in any event, equity should protect her specifically against the uncontrovertible diversion of $160,653.65 thereof for noncorporate purposes. The latter sum was diverted from the West Albany

Warehouses, Inc. for the purpose of satisfying Strubbe's personal mortgages on his East Orange property which was collateralizing the $530,000 loan. It was done at the insistence of the trustee and with the consent of Strubbe, in order to strengthen the lenders' security position. Since the lenders and Strubbe have the advantage of that enhanced collateral for the corporate loan to the detriment of Mrs. Strubbe, in equity, a credit of $160,653.65 ought to be given her on any liability sought to be imposed under the guaranty. No monetary obligation should be visited on her unless and until it exceeds $160,653.65 and then only to the extent of the excess. Enforcement of the full $530,000 guaranty against her under any circumstances would be unconscionable. To do so would be to use the alleged agreement as an instrument of oppression.

In passing it seems appropriate to note my disagreement with a principle adverted to in plaintiffs' brief. New Jersey cases are cited to the effect that if a corporate debtor cannot plead usury because of *N. J. S. A.* 31:1–6, his surety or guarantor is likewise precluded from relying on the defense. See, *e. g., Gelber v. Kugel's Tavern, Inc.,* 10 *N. J.* 191, 196 (1952). Prior to that statute it had always been the settled policy of our courts to frown on usury, to protect individuals against it and to suppress it whenever possible. And, except for *Gelber* and like cases, the tendency has been to construe the enactment strictly and to restrict its application "in order that sympathetic sweep might be given" to that policy. *In re Greenberg,* 21 *N. J.* 213, 220 (1956). Consequently, I believe the common law should be deemed changed by the statute only so far as prohibiting corporate debtors from asserting usury is concerned. Individual debtors, actual or potential, ought to remain unaffected. When payment of a usurious corporate obligation is secured or guaranteed by an individual, the law should not overlook that the usurer is relying in the ultimate, in whole or in part, upon that person's credit. It seems to me that to deprive him of the defense of usury because the Legislature changed the law as to

corporate obligors, is to attribute a wider scope to the enactment than was intended, and to subvert the long-standing policy against usury.

The agreement of the majority with the view that the usurious loan was to Strubbe as an individual (although Mrs. Strubbe is being held responsible as guarantor of a corporate obligation, except to the extent that she is relieved of the usury), makes it unnecessary to review *Gelber v. Kugel's Tavern, Inc., supra,* and like cases. But, since the issue of liability of an individual guarantor of a usurious loan to a corporation was involved originally and was argued in the trial and appellate courts, reference to it seems advisable.

For the reasons stated, I would reverse the Appellate Division and reinstate the judgment of the trial court. But, even under the majority view, Mrs. Strubbe's liability on the guaranty, if any develops in the future, should be limited to such sums as exceed $160,653.65.

SCHETTINO and HANEMAN, JJ., join in this dissent.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, PROCTOR and HALL—4.

*For reversal*—Justices FRANCIS, SCHETTINO and HANEMAN—3.