IRVING GELBER AND MORRIS SAFRIS, T/A M & I DISCOUNT CO., PLAINTIFFS-APPELLANTS, v. KUGEL'S TAVERN, INC., A CORPORATION OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.

Argued June 16, 1952—Decided June 26, 1952.

192

*Mr. Jack L. Cohen* argued the cause for appellants.

*Mr. Joseph Kraemer* argued the cause for respondents.

The opinion of the court was delivered by
WILLIAM J. BRENNAN, JR., J.   At the close of the proofs
upon trial in the Essex County Court before a jury the
court granted the motion of defendant Louis Kugel for
judgment upon his counterclaim for the recovery of usurious
bonuses.   Plaintiff appealed to the Appellate Division, and
we certified the appeal of our own motion.

The plaintiffs, Irving Gelber, a member of the bar of this
State, and Morris Safris, trading as M & I Discount Co.,
are money lenders operating their business out of Gelber's
law offices.   The defendant Louis Kugel and his wife owned
a tavern at 118 Clinton Place in Newark.   In April, 1948,
Louis Kugel's brother Nathan was opening a new business,
the Hub Grill, at 66 Market Street in Newark, and Louis
Kugel wanted to buy an interest in that business for his

son. He did not have the $13,000 in cash required for the purpose. Through Nathan he was put in contact with the plaintiffs and applied to them for a loan of $13,000. The loan was made June 16, 1948, not in his name, but was made ostensibly to a corporation which was organized subsequent to the application and incorporated the Clinton Place tavern business as Kugel's Tavern, Inc. The loan on its face was for one year in the amount of $15,900 with interest at 6 per cent secured by a chattel mortgage on the tavern. The actual loan was $13,000, the $2,900 excess being a bonus for the loan. Fifty-two notes of $100 each due weekly and a final note for $10,700 due in one year, all endorsed by Louis Kugel, his wife and son, were delivered. The corporation was organized by plaintiffs' attorney, Kalman Friedman, who also prepared the chattel mortgage and the notes and in whose office the transaction was closed.

Kugel invested the $13,000 in the Hub Grill, but the venture failed. The weekly notes were paid as they became due, but it was not possible to pay the $10,700 note when it matured. Kugel therefore went again to plaintiffs and asked for additional money. Plaintiffs agreed to make a new loan if the $10,700 balance of the old loan was paid from the proceeds of the new loan and if there was also paid from the proceeds a $1,400 debt owed to plaintiffs by the Hub Grill incurred before defendant bought his interest in that tavern. Plaintiffs also demanded a bonus of $3,400. On June 9, 1949, the second loan was made, again ostensibly to the corporation, in the face amount of $19,300 secured by a new chattel mortgage and to be repaid in one year. The loan was to be repaid by payment of 52 weekly notes of $150 each and a final note of $11,500. The aggregate of $19,300 again called for interest at 6 per cent. Plaintiffs retained or received $15,500 of the proceeds to cover the $10,700 balance on the old loan, the $1,400 owing by The Hub Grill, and $3,400 as bonus. The weekly notes were paid as they became due until April, 1950, when Kugel advised plaintiffs there were no funds to make further payments.

Plaintiffs refused an extension and instead referred Kugel to the Arrow Discount Co., another money lending concern, where Kugel obtained a loan of $13,000 out of which he paid the $12,700 balance owing plaintiffs on the second loan. After Kugel's successful application for the loan from Arrow Discount Co., plaintiffs agreed to advance an additional $3,600, upon payment of a $900 bonus. The third loan was consummated, again in the name of the corporation, in the amount of $4,500 to be repaid by payment of 105 weekly postdated checks of $30 each and a final postdated check of $1,350. Twenty-three of the $30 checks were paid when there was a default. Plaintiffs exercised their option to accelerate the due dates of the remaining postdated checks and brought suit against the corporation as maker and against the defendants Louis Kugel and his wife and son as endorsers to recover the balance of $3,810 due thereon plus interest. The defendant Louis Kugel counterclaimed for recovery of the $7,200 which was the aggregate of the bonuses paid on the three loans. At the close of the trial counter-motions for judgment were made and the trial court entered a judgment in plaintiffs' favor for the $3,810 plus interest, and a judgment on the counterclaim in favor of defendant Louis Kugel for the $7,200.

It will be noted that the total amount of loans actually received from plaintiffs was $21,800 for which bonuses totaling $7,200 were charged and in addition 6 per cent interest was charged on the $29,000 total.

The trial court ruled that the loans although in form made to the corporation were, upon the proofs, in fact made to defendant Louis Kugel individually and that the corporation was merely a device for the purpose of attempting to evade the usury laws of the State. *R. S.* 31:1–1 *et seq.* In our view, that, on this record, was an issuable question of fact which should have been submitted to the jury for determination.

*R. S.* 31:1–6 provides that "No corporation shall plead or set up the defense of usury to any action or suit

brought against it to recover damages or enforce a remedy on any obligation executed by said corporation." It is generally recognized, however, that an individual may recover usurious payments on loans made in fact to the individual though in form disguised as loans to a corporation and evidenced by obligations executed by it to hide the fact that the lender has exacted an illegal rate of interest from the real borrower. *Anam Realty Co. v. Delancey Garage, Inc.*, 190 *App. Div.* 745, 180 *N. Y. S.* 297 (*App. Div.* 1920) ; *Sherling v. Gallatin Improvement Co.*, 145 *Misc.* 734, 260 *N. Y. S.* 229 (*Sup. Ct.* 1932), reversed, but on other grounds, 237 *App. Div.* 535, 261 *N. Y. S.* 747; 237 *App. Div.* 891, 261 *N. Y. S.* 751 (*App. Div.* 1933), appeals dismissed 262 *N. Y.* 641, 188 *N. E.* 101 (*Ct. App.* 1933) ; *First Nat. Bank v. American Near East & Black Sea Line, Inc.*, 119 *Misc.* 650, 197 *N. Y. S.* 856 (*Sup. Ct.* 1922) ; *Arona Holding Corp. v. West Twenty-fifth St. Realty Corp.*, 198 *N. Y. S.* 660 (*City Ct. N. Y.* 1923). If, however, the loans are actually made to the corporation direct, usury is not a defense even to the endorsers of the corporate obligations issued for the loans. *Silberman v. Isaac Cades, Inc.*, 107 *N. J. Eq.* 574 (*E. & A.* 1931) ; *Jenkins v. Moyse*, 254 *N. Y.* 319, 172 *N. E.* 521, 74 *A. L. R.* 205 (*Ct. App.* 1930) ; *Union Dime Savings Inst. v. Wilmot*, 94 *N. Y.* 221 (*Ct. App.* 1883) ; *Dunham v. Cudlipp*, 94 *N. Y.* 129 (*Ct. App.* 1883) ; *Bradley v. Selengut*, 269 *App. Div.* 209, 54 *N. Y. S. 2d* 457 (*App. Div.* 1945) ; *Kings Mercantile Co., Inc., v. Cooper*, 199 *Misc.* 381, 100 *N. Y. S. 2d* 754 (*Sup. Ct.* 1950) ; *Werger v. Haines Corporation*, 94 *N. Y. S. 2d* 691 (*Sup. Ct.* 1949), affirmed 277 *App. Div.* 1108, 101 *N. Y. S. 2d* 361 (*App. Div.* 1950), affirmed 302 *N. Y.* 930, 100 *N. E. 2d* 189 (*Ct. App.* 1951) ; *Rabinowich v. Eliasberg*, 159 *Md.* 655, 152 *A.* 437 (*Ct. App.* 1930).

There was in Kugel's testimony support for his contention that plaintiffs fraudulently caused the corporation to be created to subvert the usury laws. He testified that the plaintiffs told him at the time of his first application that

"They were willing to give me the loan if I would go and incorporate," "and if you don't incorporate we will not loan you the money," and that plaintiffs sent him to their own attorney, Kalman Friedman, to effect the incorporation. However, there was testimony by plaintiff Gelber supporting a contrary inference. Gelber testified that he personally told Kugel that "We do not make loans to individuals," that Kugel then asked "As a corporation would you consider the loan" and that Gelber answered "yes." He denied that he had sent Kugel to Kalman Friedman and testified that Kugel informed him "he would make the necessary arrangements with an attorney and that I would hear from him"; he said that he did not know that Kugel had consulted Kalman Friedman for the purpose until "later on I found out." Kugel admitted that he had known Friedman for several years and at one time had some relations with him in connection with a transaction in which Friedman represented another party, but insisted that Friedman had never at any time represented him. Plainly, these conflicting proofs presented a jury question whether the loans were made to Kugel individually and whether the corporation was created at the insistence of the plaintiffs to serve as a cloak to cover usurious transactions to evade the usury statute.

Plaintiffs argue that the taint of usury can in any event infect only the first loan, contending, "No one will argue, certainly, that at the time when the parties agreed upon the formation of the corporation they knew or anticipated any loans to the corporation beyond the first one." The decision of the former Court of Errors and Appeals in *Lubin v. Rosenthal*, 117 *N. J. L.* 270 (1936) disposes of this argument adversely to plaintiffs. It was there held, "* * * that generally, where the suit is between the parties to an agreement infected with usury, the taint remains and is not eradicated by the making of a new agreement or the substitution of securities or new evidences of indebtedness unless the transaction be purged of its original vice."

Plaintiffs next argue that Kugel participated in the creation of the corporation as part of a corrupt agreement to

evade the usury laws and is estopped from recovering the usurious bonuses. The short answer to this is that there is no evidence whatever that Kugel was advised or was aware of that or any other purpose for which plaintiffs insisted upon the organization of the corporation, if it was organized upon their insistence as a condition to the making of the first loan.

It is then argued that Kugel has no standing to recover usurious bonuses as the amounts paid on the loans were paid with corporate funds and Kugel had only a 49 per cent stock interest in the corporation. There is plainly no merit in that argument if the fact is that Kugel was the real borrower and the corporation was only a "shift" or "device" to disguise the true borrower and defeat the usury laws. See *R. S.* 31:1–4.

Plaintiffs' last point complains of error in the alleged refusal of the trial court to include the $900 bonus on the last loan in the judgment entered upon their complaint. They argue that the post-dated checks sued upon, the amount of which included the $900 bonus, are "obligations executed" by the corporation as to which *R. S.* 31:1–6 denies the defense of usury to the corporation. We have no doubt that the checks are "obligations executed" within the meaning of the statute. *Lembeck v. Jarvis Terminal Cold Storage Co.,* 70 *N. J. Eq.* 757 (*E. & A.* 1906); *Mazarin v. Hudson County R. E. & B. Co.,* 80 *N. J. L.* 35 (*Sup. Ct.* 1910); *Ovsiovitch v. Federal Tool & Mfg. Co.,* 94 *N. J. Eq.* 744 (*E. & A.* 1923); *In re Taslyeast, Inc.,* 126 *F. 2d* 879 (*C. C. A.* 3 1941), *certiorari* denied 316 *U. S.* 696, 62 *S. Ct.* 1291, 86 *L. Ed.* 1766 (1942); *Fine v. Klein, Inc.,* 10 *N. J. Super.* 295 (*Cty. Ct.* 1950). But plaintiffs are mistaken in their assumption that the judgment in their favor does not include the $900 bonus. The sum of $3,810 for which the judgment was entered is the aggregate amount of the unpaid postdated checks which included the bonus charged. It is thus the defendant who had reason to appeal from the inclusion of the bonus in plaintiffs' judgment, but we suppose he did not do so since the bonus is included in the amount of the judgment he recovered on his counterclaim.

Reversed and remanded for a new trial upon defendant Louis Kugel's counterclaim. Costs to abide the event.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.