34 N.J. Super. 427 (1955)
112 A.2d 603
VIVIAN A. CORRADINI AND MARY CORRADINI, HIS WIFE, PLAINTIFFS,
v.
V. & M. HOLDING CORP., A BODY CORPORATE OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 9, 1955.
*429 Mr. Cyril J. McCauley, attorney for plaintiffs.
Mr. Herman E. Botwinik (Mr. Ralph R. Feigelson, of counsel), attorney for defendant Elizabeth Ascione.
Mr. Thomas S. Clancy, attorney for defendant Umberto Cafasso.
Messrs. Joyce & Brown, attorneys for defendant M. Harold Higgins.
GRIMSHAW, J.S.C.
This is a foreclosure action. On November 28, 1951 V. & M. Holding Corp., a corporation of this State, executed and delivered to Vivian A. Corradini and Mary, his wife, a bond and mortgage in the sum of $70,000, covering real property in the Borough of Little Ferry, Bergen County.
Among other things, the mortgage contained the following recital:
"The indebtedness secured by this obligation is further secured by bonds, mortgages, and absolute guarantees made by Vincent Castora and Mae Castora, his wife, covering other properties.
The mortgagee agrees that upon payment of the sums hereinafter set forth by V. & M Holding Corp., said mortgagor has the option to select and secure the release of any one or more of the tracts of land listed in the schedule following, when the principal amount due on the indebtedness of V & M Holding Corp. has been reduced by the following respective amounts, and the mortgagee agrees to execute releases in conformity therewith:

*430
 Tracts 1 to 5, inclusive ....................... $35,000.00
 (in Castora Mortgage)
 Tracts 6 and 7, inclusive ...................... 21,000.00
 (in Castora Mortgage)
 Tract 8 ........................................ 16,000.00
 (in Castora Mortgage)
 Tracts 1 to 6, inclusive ....................... 49,000.00
 (in V & M Holding Corp. mortgage)

Release of the property covered by mortgage made by V & M Holding Corp. shall not affect or alter the obligation of Vincent Castora and Mae Castora, his wife, as evidenced by said additional bonds, mortgages and guarantees.
Said bonds, mortgages and guarantees shall continue in full force and effect until the indebtedness to the mortgagees is fully paid and satisfied, or until the lands are released in accordance with the foregoing agreement."
Also on November 28, 1951 V. & M. Holding Corp. executed and delivered to Vivian A. Corradini and Mary, his wife, a bond and mortgage in the sum of $16,000, covering the same property and also containing a recital similar to the one set forth above.
As additional security for the payment of the sum of $86,000 secured by the two mortgages, V. & M. Holding Corp. executed and delivered to the Corradinis a mortgage in the sum of $86,000 covering the goods and chattels contained in the building located on the mortgaged premises, in which building there was operated a night club known as the Sherbrook. And, finally, as collateral security for the payment of the $86,000 Vincent Castora and Mae Castora, his wife, executed and delivered to Corradini a mortgage in the sum of $86,000 covering eight tracts of land. The latter mortgage contained the following recital:
"This mortgage is given as absolute and unconditional guaranty for the payment of two certain other mortgages bearing even date herewith made by V & M Holding Corp. to Vivian A. Corradini and Mary Corradini, his wife, the first of which is in the principal sum of $70,000.00, and the second of which is in the principal amount of $16,000.00, each of which bears interest at the rate of six percent per annum, payable monthly, commencing January 2, 1952, together with installments more fully set forth in said mortgages. Default in any of the conditions contained in said mortgages made by V & M Holding Corp., or in any other mortgage covering this property or *431 covering the property this day mortgaged by V & M Holding Corp. to said Vivian A. Corradini and Mary Corradini, his wife, makes this mortgage immediately due and payable at the option of the mortgagee.
The undersigned hereby waive any and all notice of any default under the terms of the bonds and mortgages made by V & M Holding Corp., and do hereby agree that the failure of the holders of said bonds and mortgages to require a strict performance of any of the terms and covenants of said bonds and mortgages shall not release the undersigned from liability under this guaranty, and the undersigned do hereby agree that the terms of the said bonds and mortgages may be altered or modified, without procuring the consent, approval or waiver of the undersigned, and without releasing the undersigned from liability under this guaranty."
Title to tracts 1 to 5, inclusive, in this latter mortgage was in Vincent Castora, subject to a mortgage on tracts 1 to 4 held by Vivian A. Corradini and Mary, his wife, in the amount of $65,000, which had been reduced to $45,750, and a mortgage of $9,000 on the fifth tract, held by the Little Ferry Savings & Loan Association. Title to the sixth tract was in Mae Castora and was free and clear. Title to the seventh tract was in Vincent Castora and was free and clear. Title to the eighth tract was in Vincent Castora and was subject to a first mortgage in the sum of $2,000.
On June 20, 1952 V. & M. Holding Corp., Vincent Castora and Mae Castora, his wife, and Vivian A. Corradini and Mary Corradini, his wife, executed an agreement wherein it was recited that the amount then due on the two mortgages given to the Corradinis by V. & M. Holding Corp. was the sum of $69,950. It was then provided that unpaid principal and interest at the rate of six per cent should be paid, at the rate of $1,250 per month. Also it was provided that the collateral mortgage given by the Castoras should be made to conform to the agreement. And, further, the release clauses in the collateral mortgage were declared to be null and void.
Also on June 20, 1952 Vivian A. Corradini and Mary Corradini, his wife, in consideration of the payment to them of $50,000, executed and delivered to Vincent Castora and Mae Castora, his wife, a release covering the first five tracts *432 covered by the collateral mortgage. Of the $50,000 received by the Corradinis for the release of the five tracts covered by the collateral mortgage, $35,900 was used to satisfy the mortgage held by Corradini on four of the five tracts released. $8,900 was credited on the principal of the $70,000 mortgage and $5,200 was credited on the principal of the $16,000 mortgage.
On April 3, 1952 a mortgage was executed in which Vincent Castora and Mae Castora, his wife, were named as the mortgagors and Umberto Cafasso was named as the mortgagee. This mortgage was in the sum of $4,400 and covered the sixth tract as described in the collateral mortgage. The mortgage was subsequently foreclosed by Cafasso and on April 5, 1954 the Sheriff of Bergen County delivered to Cafasso a deed for that sixth tract.
Title to the property covered by the Cafasso mortgage was in the name of Mae Castora, free and clear. At the hearing it developed that Mae Castora neither signed nor acknowledged the Cafasso mortgage. So it follows that the mortgage given to Cafasso was nothing more than a lien on the inchoate curtesy right of Vincent Castora in his wife's property. This inchoate right of curtesy was not liable to be levied on and sold by virtue of an execution. Bucci v. Popovich, 93 N.J. Eq. 121 (Ch. 1921), affirmed 93 N.J. Eq. 511 (E. & A. 1921). Therefore, the only interest Cafasso had under his mortgage was a lien on the inchoate right of curtesy of Vincent Castora in the property. The deed from the sheriff to Cafasso was a nullity.
On April 23, 1952 a mortgage in the name of Vincent Castora and Mae Castora, his wife, as mortgagors, and Elizabeth Ascione as mortgagee, in the amount of $8,500, was executed. The mortgage covered the sixth and eighth tracts as described in the collateral mortgage. The Ascione mortgage was neither signed nor acknowledged by Mae Castora.
So far as the sixth tract is concerned, what has been said of the Cafasso mortgage applies equally to the Ascione mortgage. Title to the eighth tract, however, is in the name *433 of Vincent Castora and as to that tract Elizabeth Ascione has a lien thereon subject to the dower right of Mae Castora.
On September 24, 1952 the defendant M. Harold Higgins obtained a judgment against Vincent Castora in the sum of $4,722.83.
The plaintiffs contend that the $70,000 and the $16,000 mortgages are in default. They allege that there is due principal in the amount of $68,700 together with interest from August 1, 1953.
Vincent Castora and Mae Castora, his wife, have not interposed any defense to the foreclosure action. With the exception of Umberto Cafasso, Elizabeth Ascione and M. Harold Higgins, all the other defendants have defaulted.
All of the answering defendants have interposed the defense of usury. Plaintiffs freely admit that the amount actually advanced to the defendant V. & M. Holding Corp. was $70,000, and that the mortgage for $16,000 was a bonus. But as has been pointed out heretofore, the defense of usury is not available to the answering defendants unless it would be available to the principal debtor. Lembeck v. Jarvis Terminal Cold Storage Co., 70 N.J. Eq. 757 (E. & A. 1905); Commercial Funding Corp. v. Melroy Construction Co., 106 N.J. Eq. 11 (Ch. 1930); General Motors Acceptance Corp. v. Larson, 110 N.J. Eq. 305 (Ch. 1932). And the right of the principal debtor to avail itself of the defense of usury depends upon a determination as to whether the loans were actually made to the corporation direct or were, in fact, made to the individual defendant though in form disguised as loans to a corporation. Gelber v. Kugel's Tavern, Inc., 10 N.J. 191 (1952).
The evidence is undisputed that Castora contracted to purchase the Sherbrook property. He needed money to complete his purchase. Because of the nature of the business, a road house, lending institutions were unwilling to risk their funds. Castora then approached the plaintiff Corradini. Corradini was disposed to consider the proposition with favor but told Castora that he would require a bonus because of the risk involved. He said to Castora that he would not lend *434 the money to him since a bonus would constitute a violation of the usury statute. But, he said, if Castora formed a corporation and title to the property was taken in the name of that corporation, he, Corradini, would lend the corporation $70,000. Thereafter the defendant V. & M. Holding Corp. was formed by Castora and the property was conveyed to it. Corradini then advanced the $70,000 to the corporation, taking back the two mortgages now under foreclosure.
It is abundantly clear that the loan was actually made to the corporation. Castora could not obtain the money himself. As was said by the New York Court of Appeals in Jenkins v. Moyse, 254 N.Y. 319, 172 N.E. 521, 74 A.L.R. 205:
"Now we are asked to disregard the corporate entity and to declare that a loan made in a form which is legal is merely an evasion of the law, a cloak for a loan made not to the corporation but to the individual who owns its stock. That we may not do. As we have said in Union Dime Savings Institution of New York v. Wilmot, 94 N.Y. 221, 227, 46 Am. Rep. 137: `The parties had a perfect right to deal with each other with the usury laws before their eyes, and to so shape the transaction as to avoid the condemnation of those laws.' As in that case, `there is no evidence whatever that the transaction took the form it did as a cover for usury. In one sense it took this form for the purpose of escaping usury.'
The transaction here had its inception in a loan which the defendants would not make to the plaintiff because it would have been usurious but which they agreed to make to a corporation which the plaintiff formed because a loan to a corporation is not usurious. The corporate mortgage when executed had a valid inception and was free from the taint of usury. It does not become invalid because, perhaps the corporation was formed as part of a plan whereby the defendants might keep outside of the statute and still obtain a return from the investment greater than the rates allowed by the statute under other circumstances. Dunham v. Cudlipp, 94 N.Y. 129.
The corporate entity may be disregarded where it is used as a cloak or cover for fraud or illegality. For that there is ample authority. Here the corporate entity has been created because the statute permits a corporate entity to make a contract which would be illegal if made by an individual. The law has not been evaded but has been followed meticulously in order to accomplish a result which all parties desired and which the law does not forbid."
That is the situation here. The defense of usury is not available to these defendants. Gelber v. Kugel's Tavern, Inc., supra; Silberman v. Isaac Cades, Inc., 107 N.J. Eq. 574 (E. & A. 1930).
*435 Defendants Cafasso and Ascione argue that the execution of the agreement of June 20, 1952, between Corradini and Castora, changing the terms of payment of the V. & M. mortgage without the consent of Cafasso and Ascione, operated to exonerate the parcels covered by their mortgages from the lien of plaintiffs' mortgages. That argument is based upon the erroneous assumption that Cafasso and Ascione by the act of taking their respective mortgages became guarantors of the payment of the V. & M. bonds. That obviously is not so. Cafasso and Ascione did not guarantee the payment of the V. & M. mortgages. They merely became subsequent encumbrancers whose liens were secured by the equity of redemption in the respective parcels covered by the mortgages. Their consent to the modification agreement was not required. And, in any event, when executed, the modification agreement was beneficial rather than detrimental to the interests of Cafasso and Ascione.
The defendants say next that the entire sum of $50,000 paid by Castora to secure the release of the first five tracts in the collateral mortgage should have been credited upon the V. & M. mortgages. I cannot follow that reasoning. The five tracts released were known as the Stage Coach Inn property. Corradini held a mortgage on four tracts on which there was due the sum of $35,900. The $50,000 received by Corradini for the release was used to satisfy that mortgage. And the balance of $14,100 was credited upon the V. & M. obligation. Plaintiffs' action was entirely proper, and, again was a benefit to the defendants. The satisfaction of the first mortgage covering the tracts on which they held liens quite obviously strengthened the defendants' position.
Defendants go further. They say that with knowledge of their mortgages plaintiffs released the Stage Coach Inn property. This action, defendants argue, exonerated the tracts covered by the Cafasso and Ascione mortgages from any liability whatever under the plaintiffs' mortgages since the value of the released property exceeded the amount of the V. & M. mortgages.
*436 In the first place, it has not been established satisfactorily that the Corradinis had notice of the Cafasso and Ascione mortgages. It is only when the mortgagee gives a release with knowledge of the existence of subsequent mortgages that the subsequent mortgagee is entitled to the benefit of the release. And the recording of the subsequent mortgage will not operate as constructive notice of its existence to the prior mortgagee. Davis v. Piggott [Cressman], 57 N.J. Eq. 619 (E. & A. 1898).
In the second place, even if it be assumed that Corradini had notice of the Cafasso and Ascione mortgages, that would not serve to free the parcels covered by those mortgages from the lien of the plaintiffs' mortgages. The most that Cafasso and Ascione could require was that their claims be given priority over any right of the plaintiffs to look to the tracts covered by the Cafasso and Ascione mortgages for the satisfaction of any deficiency arising under the V. & M. mortgages. So far as the plaintiffs and Castora are concerned, the status of the mortgages would not be affected. Turner v. Ridge Heights Land Co., 92 N.J. Eq. 64 (Ch. 1921), affirmed 92 N.J. Eq. 706 (E. & A. 1921).
Finally, the defendant Higgins urges the superiority of the lien of his judgment on the ground that by the giving of the collateral mortgage Castora was rendered insolvent. On this point there is no satisfactory proof that Castora was insolvent when he executed the collateral mortgage or that by its execution he was rendered insolvent. Also, the mortgage was free from fraud and the $70,000 loan was sufficient consideration to support it.
There will be judgment in accordance with the views here expressed.