54 N.J. Super. 205 (1959)
148 A.2d 634
JOSEPH FELLER, SIGMUND FELLER, HERMAN MARKENSOHN AND GEORGE SAGAN, PLAINTIFFS-RESPONDENTS,
v.
ARCHITECTS DISPLAY BUILDINGS, INC., A CORPORATION OF NEW JERSEY, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1958.
Decided February 18, 1959.
*207 Before Judges SCHETTINO, HALL and GAULKIN.
Mr. Alfred Brenner argued the cause for defendants-appellants, Architects Display Building, Inc. and Charles S. Cohan (Mr. Edward Dembe, attorney).
Mr. Charles Danzig argued the cause for defendant-respondent, Harry Samuels (Mr. Henry Gottfried, attorney; Messrs. Riker, Emery & Danzig, of counsel and on the brief).
Mr. Julius Stein argued the cause for plaintiffs-respondents (Messrs. Stein & Feinseth, attorneys).
The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal was taken by the defendants Architects Display Buildings, Inc., a corporation of New Jersey (hereafter referred to as "Architects") and Charles S. Cohan, individually, from a Superior Court, Chancery Division, summary judgment foreclosing two mortgages, one in the amount of $250,000 and the other $50,000.
Plaintiffs filed their complaint on January 6, 1958. Subsequently they moved, pursuant to R.R. 4:58-3, for summary *208 judgment upon the pleadings, an affidavit of plaintiff Joseph Feller, the depositions of the corporate defendant's president and certain exhibits marked in evidence on the taking of the depositions. By letter opinion dated March 10, 1958 the trial court granted plaintiffs' motion for summary judgment. Thereafter, on March 28, 1958 the corporate defendant filed a notice of motion seeking (a) the right to file an amended answer and counterclaim, (b) leave to reargue plaintiffs' motion for summary judgment, and, (c) leave to have defendant's president be made a party defendant as an individual. By order dated April 18, 1958 the trial court granted corporate defendant leave to file an amended answer and counterclaim, granted the defendant's president leave to become a party defendant limited solely for the purpose of protecting himself at any sheriff's sale in these proceedings, and granted leave to reargue the motion for summary judgment.
The trial court pointed out in its oral findings and opinion on April 25, 1958 that:
"This is an action filed by several mortgagees against a corporate defendant to foreclose two real estate mortgages. The mortgages are in default and the complaint asks that the court adjudicate that they are in default and to fix the amounts due on the mortgages and then provide for a sale of the underlying real estate which was mortgaged to secure the debt.
The defendant corporation has filed a defense by amended pleadings which seeks to set up in the main three legal defenses: (1) usury; (2) that the transaction was a violation of the Banking Act, and, (3) that there is a violation of the Real Estate Broker's Act."
In support of its amended answer and counterclaim, defendant Architects submitted three affidavits, as follows: (a) affidavit of its president, Charles S. Cohan, dated February 28, 1958; (b) affidavit of Charles S. Cohan, dated March 28, 1958, and (c) affidavit of Samuel D. Lewin, attorney and title searcher, dated March 28, 1958. No other proof was submitted or offered by Architects.
The facts are as follows: Architects had been constructing a building on premises located on Route 22, Mountainside, *209 New Jersey, and had completed about 70% of the work. In order to complete it, it sought mortgage loans from a man named Sturm. He offered to lend to Architects $250,000 in consideration for advance interest of $11,460 and a "service charge" of $28,540 which would leave a net of $210,000. Architects accepted the offer by a letter dated January 30, 1957 confirming the terms of the agreement. Pursuant to the terms, Architects on February 4, 1957 mortgaged its premises to Sturm for the sum of $250,000, due December 30, 1957. The mortgage secured Architects' promissory note of $250,000 to the order of Sturm. The mortgage provided that "In the event that said note and this mortgage are not paid on the due date the Mortgagor shall pay a service charge at the rate of 1/23 of 1% per day from the date of default to the date of actual payment." The mortgage also provided that "The within mortgage is given to secure advances to be made for the construction of a building on the mortgaged premises and to secure other charges, all in accordance with the terms of a commitment signed by the mortgagee and approved and accepted by the mortgagor; said commitment is dated January 30, 1957." The note incorporated all the terms of the mortgage. Payment of this note was personally guaranteed by Architects' president, Charles S. Cohan. Mr. Cohan, although not a lawyer, had studied for the bar.
On the same day all of Architects' stockholders, consisting of Charles S. Cohan, Florence B. Cohan, his wife, and Ethel Cohan, his sister, executed their consent to the execution of the mortgage and note and also executed a subordination of indebtedness to the loan of $250,000. By letter dated February 4, 1957 Architects also agreed that Sturm could assign to plaintiffs the original loan letter agreement dated January 30, 1957, the note, the mortgage and the assignment of a certain lease affecting the premises. On February 4, 1957 Sturm transferred to plaintiffs the mortgage and note. Architects admitted the receipt of the $210,000 in accordance with the loan agreement and admitted that no part of the $250,000, the interest or charges has been paid.
*210 On April 24, 1957 Architects borrowed an additional $50,000 from plaintiffs. This loan was secured by a mortgage containing provisions to the effect that it was given to secure a series of 11 promissory notes. The mortgage provided that "In the event that any of the notes secured by this mortgage are not paid on the due date said note in default shall bear interest at the rate of 1/23 of 1% per day from the due date to the date of actual payment; * * *." Architects admitted receipt of $41,000 of this stated loan of $50,000 pursuant to the terms of the agreement. The series of 11 notes was endorsed by Charles S. Cohan, individually. The first ten of said notes were each in the sum of $2,000, due and payable on the first day of each month starting with July 1, 1957 and ending on April 1, 1958, inclusive, and the eleventh note was in the sum of $30,000 due April 24, 1958. The notes due July 1, 1957 through November 1, 1957, inclusive, were paid by Architects. The note due December 1, 1957 was not paid and remained unpaid for more than 15 days. Each note provided that "in the event of the non-payment of any one of said series and such default continues for a period of 15 days, then at the option of the holder of any of the said notes, all or any part of the remaining unpaid notes shall forthwith become due and payable." By reason of the default in the payment of the December 1, 1957 note plaintiffs exercised the right to claim the principal unpaid balance of $40,000 represented by the notes due December 1, 1957 through April 1, 1958, inclusive, and April 24, 1958, were immediately due and payable. Architects admits that the sum of $40,000 has not been paid and that no interest or charges thereon have been paid.
As we view the record, we agree with the trial court that the case was a proper one for summary judgment. In Gherardi v. Trenton Board of Education, 53 N.J. Super. 349, 358 (App. Div. 1958) Judge Goldmann for this court stated:
"Under R.R. 4:58-3 a motion for summary judgment is to be granted upon the pleadings, depositions and admissions on file, *211 together with the affidavits, if any, where they show palpably that there is no genuine issue as to any material fact challenged. Bare conclusions in the pleadings, without factual support in the tendered affidavits, will not defeat a meritorious application for summary judgment. The considerations controlling our summary judgment practice are fully set out in Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73 et seq. (1954)."
Plaintiffs' allegations were not refuted by the three affidavits submitted by Architects. Mr. Cohan submitted two affidavits which, at best, stated as a conclusion that the loans were made to him personally and not to the corporation. The other affidavit, by an attorney and a specialist in title examination, stated that the Union County Register's records showed that Sturm had granted 43 real estate mortgage loans and had assigned 42 of them between June 1949 and July 1957; that each assignment was recorded not more than five weeks after the recording date of the specific mortgage being assigned; that the Essex County Register's records showed that Sturm had granted, for the same period of time, 148 real estate mortgage loans and had assigned 138 of them; and that each assignment was recorded not more than six weeks after the original recording date of the specific mortgage being assigned. Architects submitted no proof to sustain the allegations in its amended answer either by properly effective affidavits or by discovery proceedings. Neither did Architects request an opportunity to cross-examine plaintiffs' affiants. The record shows palpably that there was no proper challenge of any of plaintiffs' material facts.
However, assuming the facts as plaintiffs claim, we consider the defendant's defenses that plaintiffs were guilty of usury, that Sturm violated N.J.S.A. 17:9A-213 of the Banking Act and the Real Estate Broker's Act, Title 45, Chapter 15.
N.J.S.A. 31:1-6 provides:

"Corporation not to make defense of usury
No Corporation shall plead or set up the defense of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation."
*212 Our Supreme Court has stated in In re Greenberg, 21 N.J. 213, 220 (1956), and Gelber v. Kugel's Tavern, 10 N.J. 191, 196 (1952), that if the corporate form is used to cloak a loan which in fact is intended to be a loan to an individual, the alter ego of the corporation, then this statutory provision will not bar the plea of usury. In Gelber the Supreme Court stated that if the corporation to which the loan was ostensibly made was specifically incorporated at the request of the lender's agent and subsequent to the application for the loan, the defense of usury would apply. The court stated (at page 196):
"* * * It is generally recognized * * * that an individual may recover usurious payments on loans made in fact to the individual though in form disguised as loans to a corporation and evidenced by obligations executed by it to hide the fact that the lender has exacted an illegal rate of interest from the real borrower."
The Supreme Court pointed out that on the evidence the jury should have been permitted to determine the reason for the incorporation and if the jury found it was created as a cloak to evade the usury law, then the corporate shell would not benefit the lender.
But in the case before us the undisputed history of Architects does not help defendants at all. Architects was incorporated on May 24, 1956. On May 29, 1956 it acquired title to the premises involved herein. In July 1956 it began to build and by January 30, 1957, according to Mr. Cohan's depositions, "The building was enclosed, with the exception of window-walls, * * * Oh, I would say about seventy percent" of the construction was completed. We hold that the loans were made to an existing corporation.
Architects through its president contends that the obligations were entered into by Mr. Cohan and Architects as co-makers and therefore the defense of usury should apply as one of the borrowers was an individual who could have the benefit of the defense of usury. Mr. Cohan's depositions dissipate this contention. Mr. Cohan was a guarantor of the corporate obligation and not a co-maker. Mr. Justice Brennan in Gelber stated (at page 196):
*213 "* * * If, however, the loans are actually made to the corporation direct, usury is not a defense even to the endorsers of the corporate obligations issued for the loans. [citations.]"
We hold that the defense of usury is not applicable.
A corrollary point is raised with reference to the charge of 1/23 of 1% interest per day after default as being a penalty. As to the first loan, i.e. $250,000, the due date was December 30, 1957. For the period of time from the date of the loan, February 4, 1957 to December 30, 1957, plaintiffs received $11,460 advance interest payments plus the service charge of $28,540 which plaintiffs concede amounts to interest as well by deducting the amount from the face amount of the loan. By the terms of the loan no default could take place until after December 30, 1957. It is the general rule in the case of a corporate borrower that it is not illegal to provide for a higher rate of interest than the legal rate after maturity, but if such rate is unconscionably high it will be unenforceable because it amounts to a penalty. 3 Williston on Contracts, § 781, p. 2196; 5 ibid., § 1416, p. 3945; 6 ibid., § 1696, p. 4803; cf. Restatement, Contracts, § 536; cf. Ramsey v. Morrison, 39 N.J.L. 591 (Sup. Ct. 1877); cf. In re Tastyeast, Inc., 126 F.2d 879 (3rd Cir. 1942), certiorari denied Modern Factors Co. v. Tastyeast, Inc., 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1942). Here the rate before maturity amounted to about 19% and the rate after maturity is 15.87%. The latter being less it is not unconscionable and so is enforceable.
However, as to the interest payments after default on the $50,000 loan, a different factual situation exists. There, advance interest in the amount of $8,500 was retained by plaintiffs for the period from April 24, 1957 to April 24, 1958. Default took place on December 1, 1957. Plaintiffs urged and the trial court agreed that interest at the default rate of 1/23 of 1% per day ran from December 1, 1957 which was within the period for which interest had been paid. On the basis of $8,500, the interest rate on the $50,000 loan is computed to be 17%. Were we to allow an additional *214 1/23 of 1% per day the defendant would be paying 17% plus 15.87%, totalling 32.87%, on the unpaid $40,000 balance from the accelerated maturity date. This is clearly unconscionable and unenforceable as a penalty. Error was therefore committed in allowing any additional interest on the unpaid balance of that loan for the period from December 1, 1957 through April 24, 1958. The trial court was correct in allowing the 1/23 of 1% rate after the maturity date of April 24, 1958 to the date of judgment, May 9, 1958 and legal rate thereafter.
N.J.S.A. 17:9A-1 et seq., "banking and banking institutions," deal with corporations and institutions not with individuals such as plaintiffs or Sturm. N.J.S.A. 17:9A-1, entitled (Article 1) "Definitions: Applications of Act," refers to a "corporation" not to an individual. Likewise, N.J.S.A. 17:9A-2, entitled "Application of act," refers to a "corporation" not to an individual in its prohibitory sense. Plaintiffs quite properly point out that our statutes dealing with private bankers were repealed by Laws of 1948, chapter 67, page 413 and no provision for a private banker now exists. We hold that the Banking Act does not apply to plaintiffs and the loan agreements here involved did not violate any prohibitory section of the banking act.
Architects also contends that plaintiffs and Sturm violated chapter 15 of Title 45, entitled (Article 1) "Real Estate Brokers and Salesmen," in that Sturm was never licensed either as a real estate broker or salesman and therefore the provision to pay $28,540 service charge on the $250,000 loan was unenforceable since the amount of $28,540 was a fee or commission. Moreover, it states that the trial court recognized the invalidity of this provision as it compelled plaintiffs to deduct from the full amount of the loan $2,500 which they paid to Sturm for the assignment of the mortgage and loan agreement. It now complains that as the trial court found a portion of the $28,540 to be illegal, defendant should have been given an opportunity to cross-examine Sturm in order to establish the nature of this entire charge. The record contains no answering affidavit by *215 Architects to plaintiffs' affidavit on this subject matter nor does the record indicate any request by defendant to the trial court for leave to take depositions. Its legal argument lacks the necessary factual bases. Without passing upon the trial court's determination in deducting the $2,500, we find no basis in this record for sustaining defendant's contention on this phase of the appeal.
Modified and remanded for action not inconsistent with this opinion and without costs.