466 P.2d 63

Deonarine W. GANGADEAN and Vishnudevi Gangadean, his wife, Appellants,

v.

FLORI INVESTMENT COMPANY, an Arizona corporation, Appellee.

No. 1 CA–CIV 1072.

Court of Appeals of Arizona, Division 1, Department B.

March 10, 1970.

Rehearing Denied April 14, 1970.

Review Granted May 19, 1970.

---

Hash, Cantor & Tomanek, by John M. Tomanek, Phoenix, for appellants.

Laney, Warner & Angle, by Jerry L. Angle, Charles R. Hallam, Phoenix, for appellee.

JACOBSON, Judge.

In this appeal from the Superior Court of Maricopa County, defendants in a foreclosure action seek to establish that a loan made to a corporation was in fact made to them as individuals and is therefore usurious.

Plaintiff-appellee, Flori Investment Company brought suit against defendants-appellants, Deonarine W. Gangadean and Vishnudevi Gangadean, his wife, and Dewan's Beauty Products Co., Inc., an Arizona corporation, to collect sums due under a promissory note in the sum of $100,000.00 and to foreclose a realty mortgage securing the same. Judgment was entered by the trial court, sitting without a jury, on findings of fact and conclusions of law in favor of the plaintiff. Defendants' subsequent motion for a new trial was denied and this appeal followed. No appeal has been taken by Dewan's Beauty Products Co., Inc., an Arizona corporation, and therefore the term "defendants" as used in this opinion shall refer to the individual defendants only.

In March, 1964, the defendants sought a loan from the plaintiff for the sum of $150,000. Plaintiff refused at that time to issue the loan. In September, 1964, the defendants again sought moneys from the plaintiff in the sum of $100,000 and negotiations were entered into at that time be-

tween Mr. William Keim, secretary of plaintiff, and defendant Dewan Gangadean (defendant Deonarine W. Gangadean is also known as Dewan Gangadean and will be so referred to in this opinion.)

Following the negotiations, on November 2, 1964, a loan was made by plaintiff to defendant Dewan's Beauty Products Co., Inc. (hereinafter referred to as the corporation) in the sum of $100,000. While the promissory note executed by the corporation, on its face, provided that the loan bore interest at the rate of 8% per annum and was due two years after its execution, it is undisputed that a "service and placement" fee in the sum of $6,236 was paid plaintiff at the time the funds were dispensed by the escrow agent, and that this amount also constituted interest. When computed with the stated interest rates of the note, this additional amount made the loan bear a true interest rate of approximately 11¾% interest per annum.

The evidence is in conflict as to what occurred during the negotiations concerning the purpose of the loan and to whom the loan would be made. Plaintiff maintains that at all times during the period of negotiations the loan was to enable the corporation to develop and market a beauty oil product called "Roopathale", and that it was unaware that Dewan's Beauty Products Co., Inc., was not an actual, existing and operating corporation. Defendants on the other hand contend that plaintiff would not loan them money at the then existing interest rate of 8% per annum, but required them to form a corporation to which the loan could be made in order to charge the then maximum corporate interest rate of 12% per annum, and was thus a device to avoid usury. Defendants further maintained that they personally received all the benefits of the loan and that the corporation received no money as a result of the loan. The corporation was actually incorporated on October 30, 1964, two days prior to the loan actually being secured.

In any event, the written documents show that plaintiff agreed to loan the corporation the sum of $100,000 provided that the individual defendants would guarantee the corporate obligation, and that the loan would be secured by a first mortgage on unimproved real property owned by the individual defendants.

To facilitate the transaction, an escrow was established at Phoenix Title and Trust Company to handle the collection of funds, the instruments and the disbursements of moneys thereunder. Defendants delivered to the escrow agent a corporate note and a resolution of the corporation authorizing the incurring of the indebtedness. This resolution insofar as pertinent, provided as follows:

"BE IT RESOLVED by the Board of Directors of Dewan's Beauty Products Company, Inc., an Arizona corporation, that this corporation borrow from Flori Investment Company, an Arizona corporation, the principal sum of One Hundred Thousand and No/100 DOLLARS ($100,000.00) and as evidence of such indebtedness, that this corporation issue to Flori Investment Company its Promissory Note in the principal amount of One Hundred Thousand and No/100 DOLLARS ($100,000.00), bearing interest at the rate of eight per cent (8%) per annum from and after the date upon which loan proceeds are deposited in escrow by said Flori Investment Company. * * *

\* \* \* \* \* \*

"BE IT FURTHER RESOLVED that this corporation pay to Flori Mortgage Company, in consideration of services rendered to this corporation in connection with the above mortgage loan, a service and placement fee in the amount of Six Thousand Two Hundred Thirty Six and No/100 DOLLARS ($6,236.00), to be paid upon the closing of the above loan."

The corporation also delivered to the escrow agent a certificate of indebtedness indicating that the amount of the loan did not exceed its authorized corporate indebtedness. In the escrow instructions,

which the corporation signed, the escrow agent was authorized to pay off the existing liens against the real property (which were personal obligations of the defendants) in order that the plaintiff's mortgage would constitute a valid first lien. The escrow instructions also provided that the escrow agent was to disburse the remaining loan proceeds to the corporation. Contrary to these instructions, the funds were actually paid to defendant Dewan Gangadean personally.

On September 29, 1966, prior to the due date of the loan, the corporation requested and was granted a one-year extension on payment. The defendants personally agreed to this extension. In consideration for the extension the corporation agreed to pay to the plaintiff an additional sum of $3,750 which when figured with the stated 8% interest of the note actually made the note bear interest at a sum equal to approximately 11¾ percent per annum over the extended period.

The corporation duly executed a corporate resolution authorizing the extension of the note and the payment of the additional sum of $3,750. Plaintiff stated in its brief that it was its intention to charge interest on both the original note and the extension in a sum approximately equal to 11¾ percent.

The corporation failed to make the payments required under the extended term of the note and this foreclosure proceeding followed. The trial court held that plaintiff, in addition to principal and interest due on the note, was entitled to attorneys fees in a sum equal to ten percent of the amount due under the promissory note.

The defendants raise three basic issues on appeal which may be summarized as follows:

(1) Whether under A.R.S. Sec. 10–177 (1962) the corporation's resolution was sufficient to authorize the cor-

poration to pay interest in excess of eight percent per annum.

(2) If the resolution was sufficient, whether there was sufficient evidence before the trial court to support its conclusion that the loan was made to the corporation and not to the individual defendants.

(3) Whether the trial court erred in granting attorneys fees without taking evidence as to the reasonable value thereof.

As to defendant's first issue, A.R.S. Sec. 10–177 provides as follows:[1]

"Any other provision of law, to the contrary, notwithstanding, any foreign or domestic corporation organized for pecuniary gain may in writing, pursuant to an authorizing resolution of its board of directors, agree to pay such rate of interest not exceeding twelve per cent per annum as such corporation may determine on any loan under which the principal balance to be repaid shall originally exceed the sum of three thousand five hundred dollars, * * * or on any extension or renewal thereof, and as to any such transaction the claim or defense of usury by such corporation or its successor or anyone in its behalf is prohibited provided that nothing contained in this section shall apply to any loan to * * * a corporation the principal asset of which is a one or two-family dwelling."

Defendants contend that since the corporate resolution, as quoted previously in this opinion, provided that the corporation was authorized to execute the promissory note bearing interest at only 8%, the above statute was not complied with in that the corporation did not "agree to pay * * * [a] rate of interest not exceeding twelve percent per annum. * * *" What defendants overlook is the fact that in the same corporate resolution the corporation expressly agreed to

---

1. This section was amended in 1968. The quoted section above was the statute as it was in effect during all times pertinent here.

**516**

pay to plaintiff "a service and placement fee" in the sum of $6,236.00. In Arizona where a lender as a condition for granting a loan extracts a bonus or commission such an alleged bonus or commission is deemed additional interest. Modern Pioneers Ins. Co. v. Nandin, 103 Ariz. 125, 437 P.2d 658 (1968). We therefore hold that a corporate resolution which authorizes the incurring of indebtedness at a given interest rate and also authorizes payment of additional sums, which under Arizona law would be considered as additional interest, complies with A.R.S. Sec. 10–177 (1962), provided that the stated interest rate plus the additional sum does not exceed the statutory maximum interest allowed to be paid.

The primary contention raised by defendants in this appeal is that the formation of the corporation was for the sole purpose of allowing the plaintiff to make a loan to them as individuals through a corporate shell, and thereby defeat the usury laws. This contention is, in essence, a sufficiency of the evidence question. We have stated on numerous occasions that if there is reasonable evidence to support the findings of fact of the trial court, these findings will not be overturned on appeal. Miller v. Salt River Valley Water Users' Association, 11 Ariz. App. 256, 463 P.2d 840 (Filed January 15, 1970).

■ From the evidence presented, we find that the trial court's findings of fact that the loan was initially made to the corporation for corporate purposes and not in order to avoid the usury laws is more than adequately supported by the evidence. All of the documents dealing with the loan were in the corporate name. The agent of plaintiff who handled the transaction testified that he was led to believe and did believe that the corporation was in existence at the time the loan was being negotiated. He further testified that until the suit for foreclosure was filed he had no knowledge that the corporation was actually incorporated only two days prior to the loan being finalized. Testimony was also given that the purpose of the loan was to enable the corporation to produce and market a beauty product and documentary evidence of this purpose was introduced. The escrow officer testified that if in fact funds from the escrow were disbursed to Dewan Gangadean individually, that this was in contravention of the escrow instructions and a mistake of the escrow agent and not by reason of any fault of the plaintiff. Further, there is testimony to support the contention that plaintiff had no knowledge that these funds were disbursed to Dewan Gangadean individually. Finding sufficient evidence to support the trial court's finding in this regard, we will not disturb the same on appeal. Miller v. Salt River Valley Water Users' Association, supra.

■ Assuming, however, that initially the corporation was formed for the purpose of obtaining a business loan, we do not believe that such a stated purpose under the facts in this case would allow defendants to defeat recovery of the interest rate contracted. In Arizona it would not be illegal to form a corporation for the express purpose of borrowing money. See A.R.S. Sec. 10–103, 10–121, 10–152, 10–173 (1956). Moreover, A.R.S. Sec. 10–177 (both in 1962 and as amended in 1968) expressly allows corporations to pay interest at a specified but higher rate than individuals. It would also appear that the legislature contemplated this exact problem when it enacted Sec. 10–177 in 1962. As is noted, the statute does not allow the higher interest rate to be collected against all corporations.[2] The "family dwelling" limitation was obviously included to protect individuals who owned

2. A.R.S. 10–177, both in 1962 and as amended in 1968, states:
"* * * provided that nothing contained in this section shall apply to any loan to a public, charitable, religious or other nonprofit corporation, nor to a corporation the principle asset of which is a one or two-family dwelling."

only a family residence or were purchasing a family residence from being forced to incorporate in order to obtain a loan at a higher interest rate. Conversely it appears the legislature did not intend to prohibit other individuals who do not fall within this limitation from obtaining this added benefit of corporate financing in connection with their legitimate business operations.

We are supported in this contention by a review of the history of the New York Cases on this point. The earlier New York Cases held that where the loan was made to a corporation for the sole purpose of evading the usury laws, such a loan was void. Anam Realty Co. v. Delancey Garage, Inc., 190 App.Div. 745, 180 N.Y.S. 297 (1920); First Nat. Bank of Brooklyn v. American Near East & Black Sea Line, Inc., 119 Misc. 650, 197 N.Y.S. 856 (1922).

However, the later New York Cases specifically overruled prior decisions and held that individuals were entitled, in order to escape the usury laws, to deal with each other with the usury laws before their eyes, and such transactions were valid. Jenkins v. Moyse, 254 N.Y. 319, 172 N.E. 521, 74 A.L.R. 205 (1930); Bradley v. Selengut, 269 App.Div. 209, 54 N.Y. S.2d 457 (1945); Kings Mercantile Co. v. Cooper, 199 Misc. 381, 100 N.Y.S.2d 754 (1950). In order to protect persons with limited incomes from unscrupulous lenders, New York in 1955, enacted a provision similar to that enacted in Arizona in 1962, that is, excepting those corporations whose sole asset was a one or two-family dwelling from the operation of their usury laws.

Several other jurisdictions have followed the New York rule including Florida [3] and Maryland.[4] New Jersey has reached an opposite conclusion.[5] However, in view of the New Jersey statute which completely abolishes usury as a defense by a corporation and does not contain the limiting language found in the Arizona statutse, we do not feel that the reasoning of these decisions is apropos or persuasive.

■ We therefore hold that under the facts presented in this case it would be entirely valid for a borrower to incorporate, even though the incorporation was for the purpose of taking a loan in the corporation's name, if the loan is for a valid business purpose. In such a case, if the provisions of A.R.S. Sec. 10–177 are complied with, the defense of usury is not available.

Defendants' last contention is that the trial court erred in failing to hear evidence or make a finding of fact on the reasonableness of attorneys fees. In view of what transpired in the trial court, we are of the opinion that plaintiff may not urge this matter as error on appeal.

Plaintiff's complaint, among other allegations, contained an allegation that plaintiff was entitled to a reasonable attorney's fee and alleged that ten percent of the amount found due was a reasonable sum for attorneys fees. The answer of the defendant did not deny this allegation. In chambers, immediately prior to trial and with both counsel present, the court's minute entries reflect the following took place:

"* * * [O]n stipulation of counsel, in the event plaintiff prevails and is entitled to recover attorneys fees, the same should be set at ten percent of the amount recovered."

■ Stipulations by counsel are favored in the law as they reduce the time of trial and narrow the issues. Anonymous v. Anonymous, 10 Ariz.App. 496, 460 P.2d 32 (1969). Facts stipulated to by counsel are conclusive throughout the litigation and binding on the parties unless, upon

3. Holland v. Gross, 89 So.2d 255 (Fla. 1956).

4. Rabinowich v. Eliasberg, 159 Md. 655, 152 A. 437 (1930).

5. E. g., Gelber v. Kugel's Tavern, Inc., 10 N.J. 191, 89 A.2d 654 (1952).

**518**

appropriate and timely motion and for good cause shown, the parties are relieved by the court from the binding effect of such a stipulation. Higgins v. Guerin, 74 Ariz. 187, 245 P.2d 956, 33 A.L.R.2d 769 (1952).

■ Defendants' counsel having stipulated as to the amounts of attorneys fees, and no motion being made to be relieved from that stipulation, the same is as binding in this court on appeal as it was when made in the trial court, cf. Higgins v. Guerin, supra, and counsel will not be heard to urge as error the trial court's reliance on that stipulation.

Judgment affirmed.

EUBANK, P. J., and HAIRE, J., concur.